IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DIANE WILLIAMS,**

    **Plaintiff,**

v.                         Case No.: 3:11cv863

**COMMONWEALTH OF VIRGINIA,**
**STATE BOARD OF ELECTIONS,**

and

**NANCY RODRIQUES, in her Individual**
**Capacity as Secretary of the State**
**Board of Elections,**

    **Defendants.**

### PLAINTIFF'S RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS

**COMES NOW**, your Plaintiff Diane Williams ("Williams"), by her counsel, and files herewith her response to the partial motion to dismiss filed by defendants and states as follows:

1. Plaintiff concedes that her Count 1 Retaliation Claim under Title VII is not supported by an facts that she opposed any practice by the SBE made unlawful by Title VII.

Despite the fact that the plaintiff did not allege any activity she opposed was unlawful pursuant to Title VII, she is also opposed to defendants request that her retaliation claim under Title VII be dismissed with prejudice.

Such dismissal is neither justified nor proper because there is no contention that she cannot allege sufficient facts to make such a claim in an amended complaint.

Moreover, since the Court does not have subject matter jurisdiction over a claim of retaliation under Title VII, it would not be appropriate for the Court to dismiss this count with prejudice. Plaintiff argues that the proper disposition would be for the Court to grant a dismissal without prejudice.

2.  Plaintiff also concedes that her 42 U.S.C. § 1981 (Count 2) and § 1983 Claims (Count 1) against SBE are barred by the Eleventh Amendment and that it would be proper for the Court to dismiss these counts.

3.  With regard to the Federal "Whistleblower" Claim, it is technically true that the State Board of Elections is not agency defined in 5 U.S.C. § 2302(c), which definition states, "'agency'" means an Executive agency and the Government Printing Office…".

However, given the fact that a vast majority of the funds spent by the SBE are derived from federal grants, plaintiff contends that there is case law which supports the application of the federal nexus test which would allow this Court to apply the federal Whistleblower Act in this case.

In *United States v. Jackson*, No. 09-4753 (4th Cir., 2010), the Court determined that an employee who submitted false timesheets to his employer, Northrop Grumman Corporation, a subcontractor for a federal prime contractor, was properly indicted under 18 U.S.C. § 1001 for making

false statements on "a matter within the jurisdiction of the executive, legislative, or judicial branch of the Government."

The Court in *Jackson* cited several cases from other jurisdictions which have held that the jurisdictional nexus between the agency and the entity for purposes of § 1001 stems from the agency's ultimate duty to safeguard the proper spending of federal funds. (Opinion, p. 7)

The Court agreed that the federal nexus link was grounded on "the ultimate authority to see that the federal funds are properly spent." Id., at p. 8.

Plaintiff argues that if there was a sufficient federal nexus to protect the expenditure of Federal funds to criminally prosecute a private citizen who works for a nonfederal agency, then the application of the Federal Whistleblower Act, which sanctions are far less draconian than a criminal prosecution, is also proper.

Plaintiff would therefore asked the Court to deny the motion to dismiss with regard to the Federal Whistleblower Act until the plaintiff can through discovery produced a sufficient factual basis with regard to the funds that were being used by SBE to establish a federal nexus. (A copy of the opinion in *United States v. Jackson* is appended hereto as Exhibit A0)

4. Because Virginia's Whistleblower Protection Act was amended in 2011 to waive sovereign immunity, plaintiff concedes that the waiver cannot be retroactively applied.

5.  Defendants argue that "Plaintiff's First Amendment claim fails as a matter of law and must be dismissed because Williams' alleged 'speech' was not made by her as a citizen on a matter of public concern." (Memorandum, p. 8)

This argument is based on the assertion that that Williams' "claims took place pursuant to her official duties as the SBE's contracts and services coordinator - not as a citizen." Id. at pp. 8-9.  This analysis is not supported by case law.

In *Baker v. McCall*, Civil Action No. 2:11CV00037 (W.D. Va., 2012), the Court was called upon to determine whether a public employee's concerns raised with regard to his being able to marry a fellow employee who was subordinate to him was protected speech.

The Court held that "[w]hen an employee's speech pertains to a matter of personal interest, the First Amendment offers no protection. *Stroman v. Colleton Cntv. Sch. Dist*, 981 F.2d 152, 156 (4th Cir. 1992). (Opinion, p. 15)

The Court went on to find that "Baker's First Amendment claim is based on a conversation with Superintendent Comer, during which Baker expressed his intent to marry Catherine Phillips. As the defendants emphasize, this was clearly a private discussion between an employee and his supervisor regarding the employee's own personal dating relationship and his intentions with respect to that relationship.

Even if the subject of the conversation would arouse interest in the small town of Norton, 'the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment.'"

In another recent federal case in Virginia, *Silverman v. Town of Blackstone*, Civil Case No. 3:11cv155-JAG (E.D. Va., 2012), the Court was called upon to determine whether an employee of the Town of Blackstone, Virginia engaged in protected, First Amendment conduct where he took on his supervisor with regard to how the water and sewage plants were being run in the town.

The Court referred to "Silverman's various communications" which were found to be "clearly…made pursuant to his job. The sheer number of communications he generated demonstrates that his reports to management were duties of his job. All of them deal with the water and sewage plants. Some of them contain factual matter; many of them contain Silverman's opinions." (Opinion, pp. 8-9)

The Court found that "[o]ver the years, [Silverman's] communications contained budget requests, reports on monitoring plans of effluent, information about certification of employees, a proposed sale of water for use in irrigation, and the like." The Court further found that "the bulk of Silverman's written messages are either on official town email or on letterhead of the sewage plant." Finally, the Court found that Silverman

"wrote his documents simply to get his superiors to do things his way." (Id. at pp. 9-10)

While it is conceded that the plaintiff in the instant case learned about contract between the Secretary of the SBE and Paul Stenjborn by virtue of her job duties, she went beyond the Secretary who ignored her concerns about the propriety and the legality of the contract as being outside of the procurement process.

Plaintiff then directed her concerns to The State Employee Fraud, Waste, and Abuse Hotline, which is a "a toll-free telephone number 'hotline' **to encourage state employees to report situations where fraud, waste, or abuse may have occurred in Virginia Executive Branch Agencies and Institutions."**
(Emphasis added)
(http://www.doa.virginia.gov/DSIA/Fraud_and_Abuse_Hotline.cfm)

It is clear that fraud, waste or abuse that occurs within the executive branch agencies of the Government is more than a matter personal to the caller, as was determined by the Court in *Baker V. McCall*. It is also clear that these subjects are beyond getting a supervisor to do things the way the employee who reports them wants them done as was the case in *Silverman v. Town of Blackstone*.

Indeed, fraud and waste or abuse is a matter of public concern because it involves public money and public trust. Therefore, such

complaints are by definition protected speech covered by the First Amendment.

Accordingly, the defendants' motion to dismiss the First Amendment claim of the plaintiff should be denied.

6. Defendants argue that plaintiff did not comply with the notice requirements of the Virginia Tort Claims Act and for this reason this claim should be dismissed.

In making this argument, Defendants ignored the fact that on August 30, 2010, that the plaintiff's former counsel sent a five-page letter to the Secretary of the SBE in which all of the particulars regarding the tort claim was set out in detail. (Exhibit B0)

This letter complies with both the letter and spirit of § 8.01-195.6 A. of the Code of Virginia, 1950, as amended which states:

> Every claim cognizable against the Commonwealth or a transportation district shall be forever barred unless the claimant or his agent, attorney or representative has filed a written statement of the nature of the claim, which includes the time and place at which the injury is alleged to have occurred and the agency or agencies alleged to be liable, within one year after such cause of action accrued.

7. Finally, defendants contend that the Plaintiff failed to identify the particular public policy giving rise to an actionable wrongful discharge (or "Bowman") Claim (Count 5).

In ¶ 74 of the complaint, plaintiff alleges that she was terminated because "she participated in the Hotline Investigation of the Stenjborn contract". The Commonwealth's Hotline is the "particular public policy" which gives rise to plaintiff's Bowman claim.

The Hotline sets forth the policy by stating: "The major objective of the hotline is to identify situations where fraud, waste, or abuse may have occurred in state agencies and institutions so that it can be eliminated."

Moreover, the policy further states as public policy:

> You will never be asked to provide your name when you call the Hotline, nor is your call traceable. There should never be an attempt on anyone's part to try to identify the caller. Or, if someone is suspected of calling the Hotline or **if the caller is found out, there can be no retaliation or retribution. If there is, it is a violation of policy and the Executive Order and we take it seriously in order to protect the integrity and credibility of the Hotline.** Retaliation against anyone for calling the Hotline is also reportable through the grievance process.

(Emphasis added)

## **Conclusion**

For the foregoing reasons, plaintiff respectfully requests that the Court dismiss without prejudice the points raised by defendants which were conceded, and deny those points where opposition to the motion were set forth.

Plaintiff also argues that the Court deny defendants their costs incurred in the conceded points because defendants failed to give plaintiff the necessary safe harbor motion.

                                      Respectfully submitted,

                                      DIANE WILLIAMS


                                      By _____/s/_____

Janipher W. Robinson
VSB #19586
Attorney for DIANE WILLIAMS
Robinson and Greene
2415 Westwood Ave.
Richmond, Virginia 23230
(804) 321-1728 (voice)
(804) 321-0679 (facsimile)
janipher@verizon.net


## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 5th day of March, 2012, the foregoing Plaintiff's Response to Defendants' Partial Motion to Dismiss was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing (NEF) to the following:

                        Ronald N. Regnery
                Virginia Bar Number: 37453
                  Counsel for Defendants
              Office of the Attorney General
                  900 East Main Street
                  Richmond, Virginia 23219
                 Telephone: (804) 786-5632
                    Fax: (804) 371-2087
           E-mail: rregnery@oag.state.va.us

                _____/s/_____
Janipher W. Robinson
VSB #19586
Attorney for Diane Williams
Robinson and Greene
2415 Westwood Ave.
Richmond, Virginia 23230
(804) 321-1728 (voice)
(804) 321-0679 (facsimile)
janipher@verizon.net